UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHANNON POOLE, as Special Administratix of the Estate of KARY DANGLER, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.  1:19-cv-4718-JRS-MJD |
| HEALTH AND HOSPITAL CORPORATION OF MARION COUNTY d/b/a ESKENAZI HEALTH, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## ANSWER

Defendants, Health and Hospital Corporation of Marion County d/b/a Eskenazi Health ("Eskenazi Health"), Eskenazi Medical Group, Inc., Hua Luo, M.D., Ashley Browning, Meg Mongell, Jennifer Vandivier, Samantha Grimes, Dea M. Brana, Lana Cruz, James Pollom, Robert Daugherty, III, and Michael Lindstrom (collectively, "Defendants"), by counsel, hereby submit their Answer to the Complaint filed by Plaintiff, Shannon Poole, as Special Administratix of the Estate of Kary Dangler ("Plaintiff").

1.     This actions arises under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983 (42 U.S.C.A. § 1983), as well as the Constitution of the State of Indiana, Article 1, Section 11 and Section 15, and other laws of the State of Indiana.

**ANSWER:**   Defendants admit that Plaintiff brings this action pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Article 1, Sections 1 and 15 of the Indiana State Constitution, and other laws of the State of Indiana, but deny that they have violated any laws or that Plaintiff is entitled to any relief.

2.      This court has jurisdiction of this cause under the provisions of Title 28 of the United States Code, Section 1331 and Section 1343 (28 U.S.C.A. §§ 1331, 1343).

**ANSWER:**   Defendants admit that Plaintiff seek to invoke this Court's jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Shannon Poole is the duly appointed Special Administratrix of the Estate of Kary Dangler, and is a resident of the City of Indianapolis, County of Marion, State of Indiana.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the Complaint.

4.      At the time of her death, on or about December 2, 2017, Kary Dangler was a resident of the City of Indianapolis, County of Marion, State of Indiana.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 4 of the Complaint.

5.      At the time of her death, Decedent, Kary Dangler, was 38 years old and was the mother of two minor children: France, age 13, and Lucianna, age 3.

**ANSWER:**   Defendants admit that, at the time of her death, Ms. Dangler was 38 years old. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 5 of the Complaint.

6.      Kary Dangler died intestate.

2

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6 of the Complaint.

7.     At the time of her death, Kary Dangler was a patient at Eskenazi Health.

**ANSWER:**    Admit.

8.     Upon information and belief, at all relevant times, Defendant, Health and Hospital Corporation of Marion County d/b/a Eskenazi Health, is a corporation duly organized and existing under the laws of the State of Indiana, with its principal place of business in Marion County, Indiana.

**ANSWER:**    Defendants admit that Eskenazi Health is a distinct municipal corporation established by Indiana state statute, *see* Ind. Code § 16-22-8-6, with its principal place of business in Marion County, Indiana.

9.     Upon information and belief, at all relevant times, Defendant, Eskenazi Health, employed physicians, physician assistants, nurses, and allied health care professionals who provided medical, nursing, and allied health care to Kary Dangler. All actions and omissions of the employees, agents, and representatives of Defendant, Eskenazi Health, were performed in the course and scope of their employment with Eskenazi Health.

**ANSWER:**    Defendants admit Eskenazi Health employed physicians, nurses, and other health care professionals who provided medical, nursing, and other health care to Ms. Dangler, within the course and scope of their employment with Eskenazi Health. Defendants deny that Eskenazi Health employed all the physicians that provided care to Ms. Dangler.

10.     Upon information and belief, at all relevant times, Defendant, Matt A. Rutz, M.D., is a physician licensed to practice medicine in the State of Indiana, and is a qualified health care provider, as that term is defined by the Indiana Medical Malpractice Act.

3

**ANSWER:**   Admit.

11.   Upon information and belief, at all relevant times, Defendant, Matt A. Rutz, M.D., is an employee of Defendant, Eskenazi Health, and an employee of Defendant, Eskenazi Medical.

**ANSWER:**   Deny.

12.   Upon information and belief, at all relevant times, Defendant, Hua Luo, M.D., is a physician licensed to practice medicine in the State of Indiana, and is a qualified health care provider, as that term is defined by the Indiana Medical Malpractice Act.

**ANSWER:**   Admit.

13.   Upon information and belief, at all relevant times, Defendant, Hua Luo, M.D., is an employee of Defendant, Eskenazi Health and is an employee of Defendant, Eskenazi Medical.

**ANSWER:**   Defendants admit that, at all relevant times, Defendant, Hua Luo, M.D., was an employee of Defendant, Eskenazi Health. Defendants deny the remaining allegations set forth in paragraph 13 of the Complaint.

14.   Upon information and belief, at all relevant times, Defendant, Eskenazi Medical Group, Inc., is a corporation duly organized and existing under the laws of the State of Indiana, with its principal place of business in Marion County, Indiana.

**ANSWER:**   Defendants admit that Eskenazi Medical Group, Inc. is a 501(c)(3) organized and existing under Indiana state law, with its principal place of business in Marion County, Indiana.

15.   Upon information and belief, at all relevant times, Defendant, Eskenazi Medical Group, Inc., employed physicians, physician assistants, nurses, and allied health care professionals who provided medical, nursing, and allied health care to Kary Dangler. All actions and omissions

of the employees, agents, and representatives of Defendant, Eskenazi Medical Group, Inc., were performed in the course and scope of their employment with Eskenazi Medical.

**ANSWER:**   Deny.

16.   All acts and omissions of Defendant, Matt A. Rutz, M.D., herein alleged were performed or omitted by Defendant Rutz while acting within the scope of his employment with Defendant, Eskenazi Health, and Defendant, Eskenazi Medical.

**ANSWER:**   Deny.

17.   All acts and omissions of Defendant, Hua Luo, M.D. herein alleged were performed or omitted by Defendant Luo while acting within the scope of his employment with Defendant, Eskenazi Health, and Defendant, Eskenazi Medical.

**ANSWER:**   Defendants deny that Dr. Hua Luo, M.D. engaged in the acts and omissions alleged in herein. To the extent that Dr. Luo did engage in any actions, he did so within the scope of his employment with Eskenazi Health.

18.   Upon information and belief, at all relevant times, the individual Defendants identified in this lawsuit were health care providers or police officers employed by or agents for Defendant Eskenazi Health and/or Defendant Eskenazi Medical and/or the Marion County Office and were acting under the color of state law.

**ANSWER:**   Defendants admit that the individual defendants providing responses in this Answer are health care providers employed by Eskenazi Health, a public health system, and that their actions are taken under color of state law. Defendants deny the remaining allegations set forth in Paragraph 18 of the Complaint.

19.   All acts and omissions of Defendants herein alleged were performed under the color of state law.

5

**ANSWER:**     Defendants admit that the individual defendants providing responses in this Answer are health care providers employed by Eskenazi Health, a public health system, and that their actions are taken under color of state law. Defendants deny that they engaged in "[a]ll acts and omissions . . . herein alleged . . . ."

20.     On or about 5:00 p.m. on December 1, 2017, Kary Dangler is taken to Eskenazi Hospital for emergent medical treatment by her family for a suspected mental health crisis.

**ANSWER:**     Admit. Defendants state further that the time listed was 5:10 p.m.

21.     This is Kary's second trip to Eskenazi Hospital for a mental health crisis. She was admitted to Eskenazi from November 10, 2017 to November 14, 2017 for in-patient psychiatric treatment, secondary to psychosis.

**ANSWER:**     Defendants admit that Ms. Dangler was admitted to Eskenazi Hospital from November 10, 2017 to November 14, 2017 for in-patient psychiatric treatment, secondary to psychosis. Defendants deny the remaining allegations set forth in paragraph 21 of the Complaint.

22.     Upon arrival, she is charted to be there for suicidal ideation/psych evaluation. Kary is noted to have a history of self-injurious behavior, psychosis and Bi-Polar I.

**ANSWER:**     Defendants admit that, upon arrival, Ms. Dangler was charted to be there for psych evaluation, and that she was noted to have a history of self-injurious behavior, psychosis and bipolar disorder. Defendants deny the remaining allegations set forth in paragraph 22 of the Complaint.

23.     Kary is neither combative nor belligerent. When questioned by medical personnel, she turns away from them and lays on her side in a fetal position with her face forced into the mattress. She lies in a position similar to the yoga position "child's pose." She does not respond to their questions.

**ANSWER:**   Defendants deny that Ms. Dangler was neither combative nor belligerent. Defendants state further that when medical staff went into her room, Ms. Dangler immediately went into the fetal position and would not cooperate with vitals, exam, and history. Ms. Dangler had waxing and waning periods where she was very tense or not responding.

24.   Kary asks her Uncle, who, along with her Mother, is present in the ER with her, to kill her by pushing and holding her face into the mattress. The family reports this information to Kary's medical care providers.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 24 of the Complaint.

25.   Kary is forcibly placed in four-point restraint by Defendants, including but not limited to Defendant Rutz, Defendant Browning, and Defendant Unnamed Marion County Sheriff's Deputy.

**ANSWER:**   Defendants deny that Ms. Dangler was "forcibly" placed in a four-point restraint, but admit Ms. Dangler was put into a restraint. Defendants deny the remaining allegations set forth in paragraph 25 of the Complaint because the specific defendants who are alleged to have restrained Ms. Dangler are not identified with particularity.

26.   After being forcibly restrained, Kary violently pulls against and resists the restraints.

**ANSWER:**   Deny.

27.   Kary is then chemically restrained with injections of Ativan and Haldol.

**ANSWER:**   Defendants admit that Ms. Dangler was injected with Ativan and Haldol, but deny the remaining allegations set forth in paragraph 27 of the Complaint.

7

28.     Kary is involuntarily committed under an Emergency Detention. Defendant Rutz and Defendant Grimes execute the legal paperwork for an Emergency Detention of Kary Dangler, affirming that she should be detained because of "psychosis likely secondary to bipolar disease" and that without such emergency detention she would continue to deteriorate and "unintentionally harm self and/or others."

**ANSWER:**     Defendants admit that Dr. Rutz placed Ms. Dangler on an Emergency Detention due to presenting symptoms and safety concerns, and that Defendant Grimes signed the Notice of Filing. Defendants state that the Application for Emergency Detention of Mentally Ill Person speaks for itself. Defendants deny the remaining allegations set forth in paragraph 28 of the Complaint.

29.     Defendant Rutz diagnoses Kary with "psychosis, unspecified psychosis type" and notes that she required sedation for agitation and that she was a potential danger to herself and others.

**ANSWER:**     Admit.

30.     Kary spends approximately two hours in the ER. While in the ER, lab work is not done, her pain level is not assessed, a toxicology screen is not done, a urinalysis is not done, and only one set of vitals is done showing an elevated blood pressure and tachycardia with a pulse of 130. Her abdomen is charted to be soft. She is charted to have no evidence of head trauma, "exhibits no edema" and has "no signs of compartment syndrome."

**ANSWER:**     Defendants state that, while Ms. Dangler was in the Emergency Room, vitals were taken, including her blood pressure (120/82), pulse (130), respiratory rate, temperature, and oxygen level. On the physical exam portion of her medical chart, it states that Ms. Dangler appeared to be well-developed and in "No distress"; that "Patient had waxing and waning periods

where she was very tense or not responding. Abdomen soft, no signs of compartment syndrome. No signs of head trauma"; that "[s]he exhibits no edema"; and that "Initially patient was walking person to person and stating 'God loves you.'" Defendants admit that the medical records do not reflect that a toxicology screen or urinalysis were performed, but deny that they were required.

31.     At about 7:30 p.m., Defendant Rutz determines that Kary is "medically cleared for admission," despite her condition being "poor," and he transfers her to Midtown Mental Health, even though she is tachycardic.

**ANSWER:**     Defendants admit that Dr. Rutz determined that Ms. Dangler should be transferred to Midtown's Crisis Intervention Unit, the appropriate level of care, and that she was medically cleared for admission. Defendants admit that Ms. Dangler's condition was reported as "poor." Defendants deny the remaining allegations and implications set forth in paragraph 31 of the Complaint.

32.     An Unknown Eskenazi Employee #1 and an Deputy escort Kary Dangler via wheelchair from the ER to Midtown Mental Health.

**ANSWER:**     Defendants admit that Ms. Dangler was escorted via wheelchair from the Emergency Room to the Midtown Crisis Intervention Unit.

33.     At or about 7:41 p.m., Kary enters her room in the triage area of Midtown Mental Health and videotaping of her room begins.

**ANSWER:**     Defendants admit that Ms. Dangler was taken to the triage area of Midtown Crisis Intervention Unit and that her room was videotaped.

34.     A staff member assists Kary onto the bed, where she lies in the child's pose. She pulls the fitted sheet from the plastic covered mattress, then places her face into the plastic covered mattress, again similar to child's pose.

9

**ANSWER:**     Defendants deny that Ms. Dangler was on a plastic mattress, but admit the remaining allegations set forth in paragraph 34 of the Complaint.

35.     An initial triage assessment is done, but the nurse charts she is unable to assess Kary. Vitals appear to be taken but are not charted.

**ANSWER:**     Defendants admit that a nurse tried to do an initial assessment. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 35 of the Complaint.

36.     At or about 8:00 p.m., a staff member enters Kary's room, carrying a file/clipboard. She pulls a chair over and sits next to Kary. Kary is lying on the bed in child's pose. The staff member leaves.

**ANSWER:**     Defendants admit that a staff member entered Ms. Dangler's room and tried to do an interview, but Ms. Dangler would not participate.

37.     Over the next four and one-half hours, Kary moves about in her bed from pose to a prone position. She continually places her face into the mattress. No one enters her room.

**ANSWER:**     In response to the allegations set forth in paragraph 37 of the Complaint, Defendants state that Ms. Dangler was being watched on video monitor and that medical staff wanted to allow Ms. Dangler to rest and sleep.

38.     At about 10:30 p.m., Defendant Luo orders for Kary's admission to Midtown Mental Health. He orders vital signs per protocol every shift, a urine drug screen and a pregnancy test, which are never done, assault precautions and elopement precautions, and to notify the physician if Kary's diastolic blood pressure exceeds 180, her systolic blood pressure exceeds 110, or significantly, if her heart rate exceeds 120 beats per minute. Defendant Luo also orders Ativan and Haldol every 4 hours as need.

**ANSWER:**   Deny. By way of further response, Defendant Luo states that the orders under his name were the department's standard PRN (as needed) orders for patients to stay and be monitored at Midtown Triage. Within the standard of care, those orders have been routinely given verbally or electronically by psychiatrists to ensure patients get proper care before further psychiatric evaluation becomes available and/or feasible, or needed. Defendants state further that Nurses have 24 hours to get these items completed. Nurses went in to give Ms. Dangler Haldol, but she was sleeping.

39.    Defendant Luo makes no progress note into the record, and no one is seen entering Kary's room at or about the time of the orders. There is no record of Defendant Luo actually examining Kary.

**ANSWER:**   Defendants admit that Defendant Luo did not make a progress note into the record and that he did not examine Ms. Dangler. Defendant Luo states that he was the on-call psychiatrist on the evening of December 1, 2017, but denies that he was contacted about Ms. Dangler.

40.    At about 12:15 a.m., a staff member enters Kary's room and speaks to her, then pulls up one bedrail and exits. Kary's bed is positioned in the room near the wall, but not next to or touching the wall.

**ANSWER:**   Admit.

41.    Kary continues to change positions in the bed. Kary climbs to the top of the head of the bed. Kary remains in child's pose or pike/downward dog yoga position. Kary continues to shift her position in the bed from prone to child's pose to pike/downward dog. She continues to keep her face in the mattress.

**ANSWER:**   Deny.

11

42.     At 12:30 a.m., while Kary is in the downward dog/pike position, her legs buckle, she tips sideways, and she falls off of the side of the bed and into the space between the bed and the wall. She hits her head on the wall as she falls off the bed. She appears to land on the floor on her buttocks. She sits there between the bed and the wall on the floor, dazed, confused, and disorientated.

**ANSWER:**     Defendants deny the allegations set forth in paragraph 42 of the Complaint, as they lack knowledge or information as to whether Ms. Dangler hit her head on the floor or wall. Defendants further deny that any alleged confusion or disorientation was caused by any such fall, as Ms. Dangler was admitted in a state of psychosis, which also causes confusion. Defendants state further that Ms. Dangler quickly got up and helped make her bed.

43.     Staff members enter the room and find that Kary has lost control of her bladder. They begin to change the bed linens. They are wearing blue latex medical gloves.

**ANSWER:**     Admit.

44.     Kary is still on the floor in between the bed and the wall. The staff members do not help her up. Both staff members then leave the room with Kary still on the floor next to the bed after having just fallen.

**ANSWER:**     Admit.

45.     Kary, dazed and disoriented, struggles to stand, eventually managing to pull herself to a standing position, and then onto the bed. Eventually, a staff member returns and helps Kary remove her soiled gown and put on a clean gown. Staff then replace the sheets on Kary's bed.

**ANSWER:**     Defendants admit that Ms. Dangler stood up and got back into bed. Defendants admit that medical staff returned within seconds and helped Ms. Dangler remove her

soiled gown, put on a clean gown, and replace the sheets on her bed. Defendants deny the remaining allegations and implications set forth in paragraph 45 of the Complaint.

46.     Kary is never examined or assessed. Her vitals are not taken. A neurological examination is not done. A physical examination is not done. A survey of her skeletal system is not done. The fact that she fell and hit her head is not documented or charted anywhere.

**ANSWER:**     Defendants deny that Ms. Dangler was "never examined or assessed"; that her "vitals [were] not taken"; and that "[a] physical examination [was] not done." Defendants admit that there is no medical record indicating that Ms. Dangler fell and hit her head while staying at Midtown Triage.

47.     Before the staff leaves the room, they move the bed into the corner next to the wall and lock the wheels. Kary climbs onto the bed and lies down in fetal position, and then transitions into child's pose. Again, she forces her face into the mattress.

**ANSWER:**     Defendants admit that medical staff moved the bed into the corner next to the wall and locked the wheels. Defendants deny that Ms. Dangler forced her face into the mattress. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 47 of the Complaint as it relates to various poses.

48.     At approximately 12:50, a staff member enters Kary's room and places a blanket over her, then leaves. Kary remains in child's pose with her face in the plastic mattress. It is charted that Kary "still appears very sedated."

**ANSWER:**     Defendants admit that a progress note from December 2, 2017 at 1:17 a.m., reflects that "[Ms. Dangler] was observed to be up from bed in triage around 1230 am. RN reported patient peed the bed. Staff observed cleaning bed and changing sheets and blankets. Clinician present to patients [sic], she still appears very sedated. She immediately climbs into bed and closes

her eyes. She stated she knows she is here because she was hearing gods [sic] voice earlier. She denies current voices (but very sleepy), denies suicidal and homicidal ideations. Will continue to monitor in triage for safety. Patient still too sedated to be assessed." Defendants deny that Ms. Dangler was on a plastic mattress.

49.     This is the last time that a staff member actually enters Kary's room until approximately eleven (11) hours later at 11:20 a.m.

**ANSWER:**     Defendants deny the allegations and implications set forth in paragraph 49 of the Complaint. By way of further response, Defendants state that staff members stuck their heads in Ms. Dangler's room to check on her, and a tech heard her pass gas and snore. Defendants state that staff members wanted to give Ms. Dangler privacy and allow her to sleep.

50.     After the staff leaves Kary Dangler's room, she returns to child's pose with her face in the plastic mattress, and over the next 40 minutes, Kary continues to constantly shift and change positions in her bed. Her face is consistently placed in the plastic mattress.

**ANSWER:**     Defendants deny that Ms. Dangler was on a plastic mattress. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 50 of the Complaint as it relates to various poses and the placement of Ms. Dangler's face.

51.     At 1:39 a.m., Kary is in the downward dog position with her face in the plastic mattress. Kary tips over and strikes her buttocks on the wall. A few minutes later, she moves her feet.

**ANSWER:**     Deny.

52.     Kary does not move again.

**ANSWER:**   Defendants admit that any further movements by Ms. Dangler are not readily observable on the video recording.

53.     No one enters Kary's room to check on her.

**ANSWER:**   Deny.

54.     At approximately 6:15 a.m., Defendant Cruz charts that Kary's level of consciousness continues to be drowsy, that she refuses a snack, and that she has had 8 total hours of sleep. The video shows no one is seen offering Kary a snack, no one is seen assessing her level of consciousness, and no one is seen entering Kary's room.

**ANSWER:**   Defendants deny the allegations and implications set forth in paragraph 54 of the Complaint. Defendants state that the nurse was observing Ms. Dangler on video monitoring, and that Ms. Dangler was not offered a snack because she was sleeping. The medical staff did not assess a level of consciousness because she was sleeping. Defendants state further that recording a "refusal" of a snack is customary when a patient is sleeping.

55.     At 8:31 a.m., Defendant Lindstrom, an Eskenazi staff member, comes to Kary's doorway, but does not enter her room. He stands in the doorway for a moment, then leaves. Kary does not move. No one enters Kary's room until approximately 11:20 a.m.

**ANSWER:**   Defendants admit that when Defendant Lindstrom came to Ms. Dangler's doorway, she was snoring, so he allowed her to continue to sleep.

56.     At 11:20 a.m., a staff member believed to be Defendant Daugherty or Defendant Lindstrom, enters Kary's room and speaks to her. No one entered Kary's room since approximately 12:50 a.m., approximately eleven (11) hours earlier.

**ANSWER:**   Defendants admit that at approximately 11:20 a.m., a staff member entered Ms. Dangler's room and attempted to speak to her. Defendants deny the remaining allegations and implications set forth in paragraph 56 of the Complaint.

57.   Kary does not move, she does not awaken, and she does not respond. The Defendant leaves Kary's room.

**ANSWER:**   Admit.

58.   Defendant Daugherty or Defendant Lindstrom returns, alone, to Kary's room and shakes her then goes to the head of her bed and leans down and touches her about the face. His positioning blocks the view of the video camera. He leaves. Defendant Daugherty and Defendant Lindstrom return. They quickly assess Kary, then leave her room.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 58 of the Complaint.

59.   Defendant Daugherty or Defendant Lindstrom returns with a female staff member. They move Kary and find that she is in rigor mortis with fixed lividity. They leave the room. Multiple physicians enter the room and assess Kary. She is found to deceased and in obvious rigor mortis with lividity.

**ANSWER:**   Defendants admit that a medical record from December 2, 2017 at 11:37 a.m. states that: "Code Blue called for patient not breathing and unresponsive. Upon arrival to the room, the patient was cold in rigor mortis with lividity on face and extremities. There was no palpable pulse, no breath sounds and no heart beat. The patient's pupils were fixed and dilated. CODE was not continued at this time as patient determined to be deceased beyond capabilities of resuscitation. Time of death 12/2/2017 11:28 am. Case has been referred to coroner." Defendants

admit that the code team entered the room; Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that multiple physicians entered the room.

60.     When the medical examiner/coroner examines Kary, they find blue latex medical gloves under Kary's face near her nose and mouth. The gloves are crumpled tightly into a ball. The gloves appear to be inside out, having possibly been previously used. The gloves have dried fluid and a red liquid substance on the *outside* of the gloves. A photo taken by the medical examiner's office before Kary is moved show the gloves near Kary's nose and mouth as she is lying on her right side.

**ANSWER:**     Defendants deny that medical gloves were found under Ms. Dangler's face. Defendants state further that the coroner's report speaks for itself.

61.     An autopsy and toxicology analysis are performed. The toxicology report shows no evidence of illegal substances but shows the presence of Ativan and Haldol.

**ANSWER:**     Defendants admit that an autopsy and toxicology analysis were performed, and state that those reports speak for themselves.

62.     The pathologist reports that Kary Dangler has acute hemorrhagic enteritis of undetermined etiology, no evidence of significant traumatic injuries, and no evidence of acute intoxication. This is so even though Kary has no evidence of free fluid in her abdominal cavity; has sclera and conjunctival congestion with right-sided conjunctival petechiae and right-sided periorbital petechiae; has heavy lungs weighing 550 grams on the right and 510 grams on the left with lung parenchyma that is found to be "light pink to dark red purple, exudes marked amount of blood and frothy fluid"; has no erythema surrounding the right coronary artery and minute focus of hemorrhage in the fatty tissue surrounding the right coronary artery; and cerebral edema in her brain with extravasation of red blood cells into the meninges of the cerebral cortex and cerebellum.

**ANSWER:**   Defendants state that the coroner's report speaks for itself.

63.    It is believed that the pathologist did not view the video prior to issuance of his opinion, which video shows how the blue gloves are tightly crumpled together when found.

**ANSWER:**   Defendants deny that the blue gloves were crumpled. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 63 of the Complaint.

64.    At some time after Kary Dangler's death and before November 10, 2018, employees or agents of Defendant Eskenazi, Defendant Rutz, and/or Defendant Luo access Kary Dangler's medical records without consent and without a legitimate business purpose.

**ANSWER:**   Defendant Luo states that he did review Ms. Dangler's chart after he heard about her death on the news to see if she was a patient of his and afterword to determine the cause of her death and to gain medical experience. Defendant Luo denies that he did so improperly or without a legitimate business purpose. Defendants admit that after a news report about Ms. Dangler's death, other unnamed employees of Defendant Eskenazi Health accessed Ms. Dangler's medical records without consent and without a legitimate business purpose and that they were terminated for doing so. Defendants deny the remaining allegations and implications set forth in paragraph 64 of the Complaint.

65.    Upon information and belief, employees or agents of Defendant Eskenazi, Defendant Rutz, and/or Defendant Luo alter Kary Dangler's medical records.

**ANSWER:**   Deny.

66.    Upon information and belief, employees or agents of Defendant Eskenazi, Defendant Dr. Rutz, and/or Defendant Dr. Luo attempt to obstruct the truth by altering Kary Dangler's medical records and/or by altering the evidence at the scene of Kary's death.

**ANSWER:**   Deny.

## COUNT I
## SECTION 1983

67.   Plaintiff realleges and incorporates by reference all preceding facts, allegations, and statements.

**ANSWER:**   Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion.

The remaining Defendants incorporate paragraphs 1 through 66 of their Answer to the Complaint by reference as if set out in their entirety herein.

68.   When Defendants involuntarily detained Kary Dangler on an emergency basis, Defendants were acting under color of state law.

**ANSWER:**   Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion.

The remaining Defendants deny the allegations set forth in paragraph 68 of the Complaint because the specific defendants who are alleged to have involuntarily detained Ms. Dangler are not identified with particularity.

69.   When Defendants involuntarily detained Kary Dangler on an emergency basis Defendants owed Kary Dangler due process under the federal and Indiana State Constitutions.

**ANSWER:**   Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion.

The remaining Defendants state that the allegations in paragraph 69 set forth a legal conclusion to which no response is required. To the extent a response is required, the remaining Defendants deny the allegations set forth in paragraph 69 of the Complaint because the specific defendants who are alleged to have involuntarily detained Ms. Dangler are not identified with particularity.

70.     Defendants failed to observe this duty by applying excessive force to Kary Dangler when Defendants physically placed her in 4-point restraint and chemically restrained her.

**ANSWER:**     Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion.

The remaining defendants deny the allegations set forth in paragraph 70 of the Complaint.

71.     When Defendants involuntarily detained Kary Dangler on an emergency basis, the Eighth Amendment as applied to the States via the Fourteenth Amendment and the similar provisions of the Indiana State Constitution prohibited Defendants from subjecting Kary Dangler to cruel and unusual punishment and imposed upon the Defendants the duty to provide adequate medical care to her.

**ANSWER:**     Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion.

The remaining Defendants state that the allegations in paragraph 71 set forth a legal conclusion to which no response is required. To the extent a response is required, the remaining Defendants deny the allegations set forth in paragraph 71 of the Complaint because the specific defendants who are alleged to have involuntarily detained Ms. Dangler are not identified with

particularity. Defendants deny that they subjected Ms. Dangler to cruel and unusual punishment or failed to provide her with adequate medical care.

72.     At the time Defendants involuntarily detained Kary Dangler, Defendants knew that Kary Dangler was suicidal, that she had been physically restrained, that she had fought against the physical restraints, that she was tachycardiac with a pulse of 130 beats per minute, that she had been chemically restrained by the administration of Ativan and Haldol and remained sedated and somnolent following administration, and that she had fallen out of her bed and hit her head.

**ANSWER:**     Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion.

The remaining Defendants deny the allegations set forth in paragraph 72 of the Complaint because the actions and knowledge of each individual defendant are not identified with particularity as to each individual defendant. Defendants further deny the allegations that they knew that Ms. Dangler was suicidal, that she had fought against physical restraints, that she had been chemically restrained, and that she had fallen out bed and hit her head.

73.     Defendants showed a deliberate indifference to the medical needs of Kary Dangler and violated the personal and civil and constitutional rights of Kary Dangler in the following manner

        a.   Forcibly physically restraining Kary Dangler;

        b.   Failing to follow protocol for the physical, chemical, and behavioral restraint of a patient;

        c.   Failing to follow protocol to prevent the fall of a patient;

        d.   Failing to reasonably assess a patient after a fall;

e.  Failing to obtain medical treatment for a patient who has been administered chemical restraints and has fallen out of bed and hit her head;

f.  Failing to reasonably monitor and assess a patient who is chemically restrained and sedated;

g.  Failing to reasonably monitor, assess, and care for a patient who is suicidal;

h.  Failing to reasonably monitor, assess, and care for a patient who has been involuntarily committed via an emergency detention;

i.  Failing to prevent the death of a suicidal patient who is involuntarily committed;

j.  Failing to adequately assess an involuntarily committed suicidal patient who has undergone behavioral restraints, including Kary Dangler, for a period of approximately 11 hours;

k.  Failing to reasonably train, educate, and supervise employees;

l.  Failing to have sufficient staffing to safely and reasonably care for patients, including Kary Dangler;

m.  Failing to adopt policies, protocols, and standards to safely and reasonably care for patients who are physically and/or chemically restrained, including Kary Dangler;

n.  Failing to adopt policies, protocols, and standards to safely and reasonably care for patients who are involuntarily committed via an emergency detention, including Kary Dangler;

o.  Failing to adopt policies, protocols, and standards to safely and reasonably monitor, assess, and care for a patient who is suicidal;

p.  Failing to adopt policies, protocols, and standards to prevent the fraudulent charting the provision of medical care and treatment that did not occur;

q.  Failing to adopt policies, protocols, and standards to prevent the failure to chart medically significant events in a patient's emergent detention, including falling out of bed and hitting her head;

r.   Failing to adopt policies, protocols, and standards to reasonably prevent the alteration of medical records and the obstruction of evidence;

s.   Failing to adopt policies, protocols, and standards to reasonably prevent the dissemination or communication of confidential protected health information;

t.   Failing to properly hire, train, and supervise employees and agents to provide safe and reasonable care for patients who are physically and/or chemically restrained, including Kary Dangler;

u.   Failing to properly hire, train, and supervise employees and agents to safely and reasonably care for patients who are involuntarily committed via an emergency detention, including Kary Dangler;

v.   Failing to properly hire, train, and supervise employees and agents to safely and reasonably monitor, assess, and care for a patient who is suicidal;

w.   Failing to properly hire, train, and supervise employees and agents to prevent the fraudulent charting of the provision of medical care and treatment that did not occur;

x.   Failing to properly hire, train, and supervise employees and agents to prevent the failure to chart medically significant events in a patient's emergent detention, including falling out of bed and hitting her head;

y.   Failing to properly hire, train, and supervise employees and agents to reasonably prevent the alteration of medical records and the obstruction of evidence; and

z.   Other, as yet, unknown acts and omissions.

**ANSWER:** Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion. The remaining Defendants deny the allegations set forth in paragraph 73 and its subparagraphs (a) through (z).

74.     Specifically, Defendants forcibly physically restrained Kary Dangler, forcibly chemically restrained Kary Dangler, failed to render medical care to Kary Dangler after she fell out of bed and hit her head, and left Kary Dangler, who was suicidal, unattended without reasonable assessment and care in a room by herself for approximately 11 hours.

**ANSWER:**     Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion. The remaining Defendants deny the allegations and implications set forth in paragraph 74 of the Complaint.

75.     Defendants acted with malice, bad faith, and deliberate indifference to the rights of Kary Dangler.

**ANSWER:**     Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion. The remaining Defendants deny the allegations set forth in paragraph 75 of the Complaint.

76.     Defendants are not immune from liability for their actions and omissions.

**ANSWER:**     Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion. The remaining Defendants deny the allegations set forth in paragraph 76 of the Complaint.

77.     On December 2, 2017, Kary Dangler died as a direct and proximate result of the actions and omissions of Defendants.

**ANSWER:**   Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion. The remaining Defendants deny the allegations set forth in paragraph 77 of the Complaint.

78.     As a direct and proximate result of the actions and omissions of Defendants, the Estate of Kary Dangler has incurred medical expenses, funeral expenses, burial expenses, and the costs of administration, including reasonable attorney's fees and litigation expenses, for prosecution of this wrongful death action.

**ANSWER:**   Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion. The remaining Defendants deny the allegations set forth in paragraph 78 of the Complaint.

79.     As a direct and proximate result of the actions and omissions of the Defendants, the surviving children of Kary Dangler have incurred medical expenses for counseling for the loss of their loving Mother, have lost the financial support and services that she lovingly provided to them, and have lost the love, care, affection, and parental guidance of their loving Mother.

**ANSWER:**   Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion. The remaining Defendants deny the allegations set forth in paragraph 79 of the Complaint.

80.     As a direct and proximate result of the actions and omissions of Defendants, the Estate of Kary Dangler and the surviving dependent children of Kary Dangler are entitled to punitive damages.

**ANSWER:**    Defendant Eskenazi Health states that it has filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendant Eskenazi Health further states that no answer is provided at this time pending resolution of that motion. The remaining Defendants deny the allegations set forth in paragraph 80 of the Complaint.

**COUNT II**
**STATE LAW MEDICAL NEGLIGENCE**

81.    Plaintiff realleges and incorporates by reference all preceding facts, allegations, and statements.

**ANSWER:**    Defendants incorporate paragraphs 1 through 80 of their Answer to the Complaint by reference as if set out in their entirety herein.

82.    Defendants owed Kary Dangler a duty of reasonable care.

**ANSWER:**    Defendants admit that specific defendants owed Ms. Dangler a duty of reasonable care, based upon the particular circumstances relating to their care for Ms. Dangler.

83.    Defendants breached the duty of reasonable care by failing to provide medical care to Kary Dangler that met the reasonable standard of care.

**ANSWER:**    Deny.

84.    Plaintiff's state law medical negligence claim is subject to the Medical Malpractice Act, and a proposed Complaint is pending with the Indiana Department of Insurance. An opinion has not yet been issued by the Medical Review Panel.

**ANSWER:**    Admit.

85.    Pursuant to the doctrine of respondeat superior, Defendant, Eskenazi Health, is liable for the negligent actions of its employees, and Defendant, Eskenazi Medical Group, is liable for the negligent actions of its employees.

**ANSWER:**   Defendants state that the allegations set forth in paragraph 85 of the Complaint set forth a legal conclusion to which no response is required. Defendants deny that they were negligent.

86.   Defendant, Eskenazi Health, also is liable for its own independent negligent actions, including but not limited to failure to have appropriate policies and procedures, failure to have appropriate staffing levels, and failure to hire, train, educate, and supervise its employees.

**ANSWER:**   Deny.

87.   On December 2, 2017, Kary Dangler died as a direct and proximate result of the actions and omissions of Defendants.

**ANSWER:**   Deny.

88.   As a direct and proximate result of the negligence of Defendants, the Estate of Kary Dangler has incurred medical expenses, funeral expenses, burial expenses, and the costs of administration, including reasonable attorney's fees and litigation expenses for prosecution of this wrongful death action.

**ANSWER:**   Deny.

89.   As a direct and proximate result of the negligence of the Defendants, the surviving children of Kary Dangler have incurred medical expenses for counseling for the loss of their loving Mother, have lost the financial support and services that she lovingly provided to them, and have lost the love, care, affection, and parental guidance of their loving Mother.

**ANSWER:**   Deny.

## COUNT III
## STATE LAW BREACH OF DUTY OF EXTRAORDINARY CARE

90.   Plaintiff realleges and incorporates by reference all preceding facts, allegations, and statements.

**ANSWER:** Defendants state that they have filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendants further state that no answer is provided at this time pending resolution of that motion.

91.     Defendants owed Kary Dangler a duty of extraordinary care separate and apart from the duty of reasonable care subject to the Medical Malpractice Act.

**ANSWER:**     Defendants state that they have filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendants further state that no answer is provided at this time pending resolution of that motion.

92.     Kary Dangler was suicidal, and Defendants determined that she posed a danger to self and others. She suffered infirmities and disabilities that prevented her from providing for her own care. Kary Dangler was involuntarily committed secondary to an emergency detention and had undergone behavioral restraint via physical restraints and chemical restraints. Kary Dangler was under the total custodial care of Defendants at all relevant times.

**ANSWER:**     Defendants state that they have filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendants further state that no answer is provided at this time pending resolution of that motion.

93.     Because of Kary Dangler's infirmities, disabilities, and involuntary detention, Kary Dangler was unable to provide adequate care for herself. Defendants owed Kary Dangler a duty of extraordinary care, over and above the standard of reasonable care.

**ANSWER:**     Defendants state that they have filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendants further state that no answer is provided at this time pending resolution of that motion.

94.     Defendants breached the duty of extraordinary care when treating Kary Dangler by failing to reasonably assess, examine, diagnose, and treat her medical condition both while in the ER and while involuntarily detained at Midtown Mental Health; by forcibly physically and chemically restraining Kary Dangler; by failing to prevent the fall of Kary Dangler; by failing to assess and treat Kary Dangler, after a fall; by failing to monitor, assess, and care for Kary Dangler, who is suicidal and who has been physically and chemically restrained and sedated and who has been involuntarily committed via an emergency detention; by failing to prevent the death of a suicidal patient involuntarily committed who has undergone behavioral restraint, including Kary Dangler, while under the total custodial care of the Defendants; by failing to adequately staff the mental health department; by fraudulently charting the provision of medical care and treatment that did not occur and failing to chart medically significant events in a by altering medical records and obstruction of evidence; and by other, as yet, unknown acts and omissions.

**ANSWER:**     Defendants state that they have filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendants further state that no answer is provided at this time pending resolution of that motion.

95.     Pursuant to the doctrine of respondeat superior, Defendant, Eskenazi Health, is liable for the actions of its employees, and Defendant, Eskenazi Medical Group, is liable for the actions of its employees.

**ANSWER:**     Defendants state that they have filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendants further state that no answer is provided at this time pending resolution of that motion.

96.     On December 2, 2017, Kary Dangler died as a direct and proximate result of the actions and omissions of Defendants.

**ANSWER:**    Defendants state that they have filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendants further state that no answer is provided at this time pending resolution of that motion.

97.    As a direct and proximate result of the negligence of Defendants, the Estate of Kary Dangler has incurred medical expenses, funeral expenses, burial expenses, and the costs of administration, including reasonable attorney's fees and litigation expenses for prosecution of this wrongful death action.

**ANSWER:**    Defendants state that they have filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendants further state that no answer is provided at this time pending resolution of that motion.

98.    As a direct and proximate result of the negligence of the Defendants, the surviving children of Kary Dangler have incurred medical expenses for counseling for the loss of their loving Mother, have lost the financial support and services that she lovingly provided to them, and have lost the love, care, affection, and parental guidance of their loving Mother.

**ANSWER:**    Defendants state that they have filed a partial motion to dismiss under Rule 12(b)(6) which is presently pending before the Court. Defendants further state that no answer is provided at this time pending resolution of that motion.

## UNANSWERED ALLEGATIONS

Each and every allegation contained in the Complaint which is not specifically admitted or denied herein is generally denied.

## ADDITIONAL DEFENSES

1.    Plaintiff's Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

2.     Defendants are qualified health care providers and, as such, are protected by the Indiana Medical Malpractice Act, I.C. 34-18-1-, et seq.

3.     Plaintiff has failed to exhaust her administrative remedies as required by the Indiana Medical Malpractice Act. Therefore, her medical malpractice claim should be stayed, pending disposition by a Medical Review Panel.

4.     Defendants are entitled to qualified immunity as to claims asserted against them in their individual capacities under 42 U.S.C. § 1983.

5.     To the extent Plaintiff receives or has received payments for the alleged injuries and damages, any such payment constitutes satisfaction and must be set-off against any recoveries made in litigation.

6.     Plaintiff and Plaintiff's decedent have failed to mitigate their damages as required by law.

7.     Plaintiff's decedent was contributorily negligent.

8.     Plaintiff's decedent incurred the risk.

9.     Defendants are entitled to introduce evidence of discounted value of medical expenses pursuant to *Stanley v. Walker*, 906 N.E.2d, 852, 855 (Ind. 2009).

10.    Plaintiff's claims under *Monell* are barred for failure to properly state a claim.

11.    Plaintiff's lawsuit and any recovery is barred to the extent that the claims are subject to any state or federal statute limiting the cause of action or the recovery of damages, including, but not limited to, a cap on compensatory damages and a limitation on interest.

12.    Plaintiff's claims are barred to the extent she has waived claims by actions or inactions.

13.     Plaintiff is barred from recovering damages to the extent such damages were the proximate result of the actions or inactions of a non-party.

14.     Plaintiff's claims are estopped under the doctrines of collateral estoppel or res judicata to the extent the claims or issues have been previously litigated.

15.     Plaintiff's claims are estopped to the extent the doctrine of judicial estoppel applies.

16.     Defendants assert all defenses and immunities provided by the federal statutes sued on by the Plaintiff and any related statutes or regulations.

17.     Defendants assert that there existed probable cause, articulable reasonable suspicions, or other lawful cause for the alleged emergency detention of Plaintiff.

18.     Defendants are immune from liability in state law, pursuant to any and all applicable provisions of Indiana Code § 34-13-3-3.

19.     The individual Defendants cannot be liable for punitive damages under state law, pursuant to the provisions of Indiana Code § 34-13-3-4(b).

20.     Plaintiff's state law claims against the Defendants individually are barred by Ind. Code § 34-13-3-5.

21.     Plaintiff's claims are barred to the extent they are untimely and exceed the scope of any Tort Claim Notice as required by Ind. Code § 34-13-3-8.

22.     Plaintiff has failed to describe the claims made against Defendants with sufficient particularity to enable Defendants to determine what additional defenses they may have in response to the purported claims. Defendants therefore reserve the right to assert all defenses which may be pertinent to Plaintiff's alleged claims once the precise nature of those claims is ascertained through discovery.

WHEREFORE, Defendants, by counsel, respectfully request that the Court enter judgment in their favor and against Plaintiff on her Complaint; that Plaintiff take nothing by way of her Complaint; that the Court award Defendants their reasonable costs, including attorneys' fees, incurred in defending this action; and that the Court award Defendants all other appropriate relief.

## **JURY DEMAND**

Defendants demands a jury on all issues so triable.

Respectfully submitted,

/s/ *Philip R. Zimmerly*

Mary M. Ruth Feldhake (#15013-41)
Philip R. Zimmerly (#30217-06)

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana  46204
(317) 684-5000; Fax (317) 684-5173
MFeldhake@boselaw.com
PZimmerly@boselaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020, a copy of the foregoing "Answer" was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Jill Bracken-Emerson
EMERSON LAW, LLC
3091 E. 98th Street, Suite 180
Indianapolis, IN 46280
jill@emersonlawllc.com

Anthony W. Overholt
FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
P.O. Box 44961
aoverholt@fbtlaw.com

Elliott I. Pinkie
CLINE LAW GROUP, LLC
50 South Meridian Street, Suite 302
Indianapolis, IN 46204
epinkie@clinelawgroup.legal

Anne C. Harrigan
Adam S. Willfond
OFFICE OF CORPORATION COUNSEL
200 East Washington Street, Room 1601
Indianapolis, Indiana 46204
anne.harrigan@indy.gov
adam.willfond@indy.gov

/s/ Philip R. Zimmerly
Philip R. Zimmerly

3788594

34